THE SANTO DOMINGO.

(District Court, E. D. New York. December 18, 1903.)

1. WAR—PRIZES—DESTRUCTION TO PREVENT RECAPTURE.

A captured vessel is not appropriated "for the use of the government," within the meaning of Rev. St. §§ 4615, 4624, 4625 [U. S. Comp. St. 1901, pp. 3127, 3130], so as to entitle the captors to prize money where they destroy it to prevent recapture.

2. SAME—ORDER OF NAVY DEPARTMENT.

Order 492 of the navy department providing for four alternatives: (1) Sending the prize to the nearest home port, (2) converting it to public use in case of need; (3) selling it if it may not be sent in for reasons indicated; (4) destroying it if it cannot be sold or there be imminent danger of recapture,—does not authorize destruction of the prize with the view of converting it to public use.

3. SAME—BOUNTY.

Where captors of a vessel destroy it to prevent recapture, they are not entitled to prize money, but to bounty, under Rev. St. § 4635, providing that there shall be paid as bounty to the captors of a vessel of war which is immediately destroyed for the public interest, but not in consequence of injuries received in action, $50 for every person who shall be on board at the time of such capture.

Harriman & Fessenden (James D. Fessenden, of counsel), for captors.

George H. Pettit, U. S. Atty.

THOMAS, District Judge. The United States war ship Eagle pursued the Santo Domingo, a Spanish armed vessel of equal or superior force, and, between 3 and 4 o'clock in the afternoon of July 12, 1898, captured her after she had been stranded upon the coast of Cuba. The Eagle could have floated her prize only with assistance and after a delay of several days. The commander, believing that there was imminent danger of recapture, directed that the prize be destroyed by fire, and at sundown of the same day this was done. However, $1,100, the value of certain property taken from her, has been deposited for disposition in this action. This money, less the proper expenses of the action, should be distributed to the captors.

But the captors contend that the vessel and her cargo of food and munitions of war, intended for the enemy, were appropriated "for the use of the government" of the United States, within the meaning of Rev. St. §§ 4615, 4624, 4625 [U. S. Comp. St. 1901, pp. 3127, 3130], and that they should recover the value thereof. Their argument is: The vessel was captured; there was imminent danger of recapture; hence the commander of the Eagle directed the destruction of the prize; such destruction was equivalent to an appropriation for the use of and by the United States, acting through its representative, the commander of the Eagle; hence the captors stand in the same position as if the prize, or her proceeds, if sold, had been taken to the proper port and adjudicated, or as if she had been taken in fact and used by the United States.

This contention is not approved. Captors share in such property as is delivered for adjudication. Such delivery must be actual, unless on account of the condition of the property it cannot be made, when

sale is authorized by the commanding officer present, or unless it has been appropriated "for the use of the government." Rev. St. § 4615 [U. S. Comp. St. 1901, p. 3127].

"Sec. 4625. If by reason of the condition of the captured property, or if because the whole has been appropriated to the use of the United States, no part of it has been or can be sent in for adjudication, or if the property has been entirely lost or destroyed, proceedings for adjudication may be commenced in any district the secretary of the navy may designate; and in any such case the proceeds of anything sold, or the value of anything taken or appropriated for the use of the United States, shall be deposited with the assistant treasurer in or nearest to that district, subject to the order of the court in the cause. If, when no property can be sent in for adjudication, the secretary of the navy shall not, within three months after any capture, designate a district for the institution of proceedings, the captors may institute proceedings for adjudication in any district. And if in any case of capture no proceedings for adjudication are commenced within a reasonable time, any parties claiming the captured property may, in any district court as a court of prize, move for a monition to show cause why such proceedings shall not be commenced, or institute an original suit in such court for restitution, and the monition issued in either case shall be served upon the attorney of the United States for the district, and on the secretary of the navy, as well as on such other persons as the court shall order to be notified." [Page 3130.]

It should be observed that there is no provision for a deposit in case of property "lost or destroyed"; nor are the captors specifically enabled to institute proceedings in any district, "if the property has been entirely lost or destroyed," although provision is made in the first sentence of the section for an adjudication under such conditions. The captors may institute proceedings after three months, in any district, if the secretary of the navy has not designated one, "when no property can be sent in for adjudication," by reason of its condition requiring sale, or because it has been appropriated by the United States. This limitation of the captors to initiating proceedings in any district of their selection to the conditions last mentioned, and thereby excluding them from instituting proceedings in such district "when the property has been entirely lost or destroyed," indicates that congress did not contemplate that the captors could have any interest in property destroyed. The last sentence of the section refers to suit for restitution and proceedings for adjudication by "parties claiming the captured property."

Section 4624 [page 3130] provides:

"Whenever any captured vessel, arms, munitions, or other material are taken for the use of the United States before it comes into the custody of the prize court, it shall be surveyed, appraised, and inventoried, by persons as competent and impartial as can be obtained, and the survey, appraisement, and inventory shall be sent to the court in which proceedings are to be had; and if taken afterward, sufficient notice shall first be given to enable the court to have the property appraised for the protection of the rights of the claimants and captors. In all cases of prize-property taken for or appropriated to the use of the government, the department for whose use it is taken or appropriated shall deposit the value thereof with the assistant treasurer of the United States nearest to the place of the session of the court, subject to the order of the court in the cause."

The statute provides for bringing into port for adjudication the property itself, or the proceeds of the property, if it has been sold, unless before delivery it shall have been appropriated upon an ascertainment of its value in the manner stated.

This brings the discussion to an essential duty imposed upon captors as a prerequisite of recovering prize money. A captor is not entitled to prize money unless he capture and prevent recapture. The captor must take and deliver. He must in offensive action seize, and, if need be, in defensive action retain, and his success in both regards, if it be good prize, perfects his right to an adjudication for prize money. Rescue or recapture defeats such right. But the captors' present claim is that they may capture, and that, if there be imminent danger of recapture, which event would preclude prize money, they may destroy the res, and recover as in case of due delivery; that is, while defense against recapture is a condition precedent to recovery, they urge that they may avoid such defense, and its consequences to them, by destroying the thing itself, and recover as if they had successfully defended it. Their apprehended inability to fulfill the condition precedent, viz., prevent recapture, is their very excuse for its nonperformance, and the basis of their claim for an award only due upon such performance. They neither took in the prize nor attempted to do so; they neither defended nor attempted to defend; they destroyed the prize in anticipation of their incapacity to do these things; yet they seek the benefit that matures only upon such accomplishment. When captors take a lawful prize, they have alternative duties,—to save it, if practicable, to destroy it, if it be impracticable to save. The first duty insures prize money, other elements of the right existing; the second duty involves the sacrifice of prize money, and the pecuniary reward is in the form of bounty. But captors cannot scuttle the ship captured, and have her in the form of prize money. Their money reward is measured by what they deliver secure from the enemy. If persons be sent to capture a vessel, and thereupon to destroy her, the destruction precludes prize money (Decatur v. U. S., Dev. Ct. Cl. p. 201), and if the destruction ex necessitate rei must and does follow capture the captor's status is the same. Indeed, if it is impracticable to bring the property into port or to make some safe disposition of it, the captor's duty is to destroy, although it result in a renunciation of prize money. The usual duty to save a capture from the enemy to earn prize money stands as does the duty to sacrifice the prize and prize money if occasion demands. The suggestion that a person bound to save against the peril of recapture, if he would have prize money, may avoid the peril by destroying the subject of defense, and yet recover a compensation measured by the value or proceeds of the thing destroyed, as if it had been defended and saved, involves contradictions which forbid its adoption as a rule of law.

But it is urged that the navy department authorized appropriation of a captured vessel by the destruction thereof, if there was imminent danger of recapture, leaving to the judgment of the commander present whether the vessel should be taken for its value by the government. The directions found in certain subdivisions of general order No. 492 are as follows:

"(20) Prizes should be sent in for adjudication, unless otherwise directed, to the nearest home port, in which a prize court may be sitting.

"(21) The prize should be delivered to the court as nearly as possible in the condition in which she was at the time of seizure. * * *

"(24) The title to property seized as prize changes only by the decision rendered by the prize court. But, if the vessel itself, or its cargo, is needed for immediate public use, it may be converted to such use, a careful inventory and appraisal being made by impartial persons and certified to the prize court.

"(25) If there are controlling reasons why vessels may not be sent in for adjudication, as unseaworthiness, the existence of infectious disease, or the lack of a prize crew, they may be appraised and sold; and if this cannot be done they may be destroyed. The imminent danger of recapture would justify destruction, if there was no doubt that the vessel was good prize."

This order is intended to interpret the statutes for the guidance of captors. It provides for four alternatives: (1) Sending the prize to the nearest home port; (2) converting it to public use in the case of need; (3) selling it if it may not be sent in for reasons indicated; (4) destroying it if it cannot be sold or there be imminent danger of recapture. One of these courses the captor must adopt. It is quite obvious that the navy department did not intend to authorize the destruction of the prize with the view of converting it to public use. The order for converting to use, numbered and stated separately from the order respecting destruction, excludes conversion to public use by way of destruction. Destruction is authorized only in case the prize cannot be sent in for adjudication, converted to the use of the government, or sold, upon some of which events the recovery of prize money depends. The order adds nothing to the usual practice or duty of captors, nor does it attempt to create new rights or a new method of meeting the requirements of the statutes.

It has been pointed out already that the statute upon which award depends fixes the condition of receiving it, and that the salving of property captured, and not its destruction, is a prerequisite of sharing in the proceeds thereof. Indeed, compensation, measured by the value or proceeds of something saved, is the very vital thought of the statute. Conservation, not destruction, entitles.

It is not to be inferred that the navy department intended to give to its order a meaning inconsistent with the usual law and the statutes. The language itself explicitly excludes such interpretation, and is in perfect harmony with the recognized duty to take and keep, or to destroy, if necessary, to prevent recapture, or in case of inability to bring into port.

In view of such conformity of the general order to the usual duty of the commander of the capturing force, the long-prevailing practice in such cases, and the law as heretofore interpreted, it is not to be presumed that the department intended to commit the government to the payment of the value of all prizes destroyed, at the instance of every victorious captain, where there was imminent danger of recapture, or where it was necessary to abandon them without sale, upon the theory that such destruction is equivalent to an appropriation to the use of the government. If the government appropriates when it destroys in apprehension of recapture, it may appropriate when destruction is prompted by any other motive, and destruction in every case would become appropriation to its use. The statute does not permit the distribution of the proceeds of nonexisting property that was never sold, or of the amount of the value of property that was appropriated to use by being made incapable of use. If

a once res not in esse may be regarded as useful—that is, profitable—to the government, because its negativity renders it incapable of use by the enemy, yet in no proper sense can it be said that a thing destroyed to prevent use by the hostile force, and thereby actually bereft of entity, is appropriated to the use of the government. The use of nothing as if it were something baffles conception. No. 24 of the order of the navy department directs that "if the vessel itself, or its cargo, is needed for immediate public use, it may be converted to such use." The captors' contention would paraphrase the order as follows: " 'If the vessel * * * is needed for immediate public use, it may be converted to such use' by destroying it." Use is service. Property may be devoted to a service that will result in its consumption or destruction, but destroying it for the sake of destruction, to prevent anybody using it, is not user.

While refined definition is not desirable, it is inferred that the statute uses words according to their usual meaning, and that it does not contemplate that the use of the vessel appropriated should consist in the act of laying waste to it, or in annihilating it, or the benefit arising therefrom; and the general order of the navy department certainly excludes any intention to take and pay for the property when no use thereof is actually had, and it is destroyed before such actual use for the purpose of preventing its recapture.

The compensation of the captors in the present case seems to fall under section 4635, which provides, among other things:

"* * * And there shall be paid as bounty to the captors of any vessel of war captured from an enemy, which they may be instructed to destroy, or which is immediately destroyed for the public interest, but not in consequence of injuries received in action, fifty dollars for every person who shall be on board at the time of such capture."

The scheme of the statute seems to be to allow captors in case of proper prize to share in the value of property saved, and to reward by way of bounty for property destroyed in the engagement, or in consequence of injuries sustained in action, or destroyed thereafter for the public interest. The following is a summary of the holding herein:

The destruction of a lawful prize at the instance of the commander of the captors, by reason of the imminent danger of recapture, is not such an appropriation of the property for the use of the government as constrains the United States to deposit the value thereof for distribution, and entitles the captors to share therein. This conclusion is based upon the following findings:

(1) The statute contemplates that the captured property, or the proceeds, if sold, shall be brought to the proper port, unless it be destroyed or appropriated to the use of the government before such delivery, and, in case of appropriation before or after delivery, the value of the property shall be deposited by the government for disposition. Adjudication as to the legality of the capture and award of prize money in a proper case are required when the vessel is brought in, sold, or appropriated, but adjudication only as to lawful prize as distinguished from award of bounty money when the property has been destroyed.

(2) The general order of the navy department clearly distinguishes between conversion to public use and destruction, and makes one the alternative of the other.

(3) The duty of saving the property from recapture is a condition precedent of recovering prize money, which is measured by what is delivered secure from the hostile force, and not by what may be destroyed in view of the peril of recapture or other exigency, and this duty to defend and to save cannot be used as a plea to escape defense, under the guise of appropriation at the public expense.

(4) The common duty of captors is to destroy, if the property cannot be brought in, sold, or safely kept, and such destruction precludes the recovery of prize money. The performance of this long-existing obligation is inconsistent with and has not and cannot be regarded as an appropriation for the use of the government.

(5) Property annihilated, although its nonexistence be beneficial in depriving the enemy of its use, is alike incapable of use by the captors' government, and the act of destroying for the sake of destruction, as distinguished from consumption or destruction in the course of use, is not such user as the statute contemplates.

The money in court is alone subject to distribution, and a decree. will be entered accordingly.